**EXHIBIT A**

Richard A. Hoyer (SBN 151931)
rhoyer@hoyerlaw.com
Ryan L. Hicks (SBN 260284)
rhicks@hoyerlaw.com
Eisha Perry (SBN 330621)
eperry@hoyerlaw.com
HOYER & HICKS
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
tel (415) 766-3539
fax (415) 276-1738

Attorneys for Plaintiff
CARMEN LAMHA

NO SUMMONS ISSUED

**FILED**
San Francisco County Superior Court

NOV. 0 4 2020

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

CARMEN LAMHA,

          Plaintiff,

vs.

SAN FRANCSICO COMMUNITY COLLEGE DISTRICT, AND DOES 1-25, inclusive,

          Defendants,

Case No. CGC-20-587801

COMPLAINT FOR DAMAGES:
(1) Race Discrimination in Violation of FEHA
(2) Wage Discrimination in Violation of the California Equal Pay Act
(3) Retaliation in Violation of the FEHA
(4) Retaliation in Violation of Labor Code § 1102.5
(5) Interference in Violation of FMLA
(6) Interference in Violation of CFRA

DEMAND FOR JURY TRIAL

Plaintiff Carmen Lamha (hereinafter "Lamha" or "Plaintiff") files this Complaint against Defendants City College of San Francisco and DOES 1-25 (collectively "CCSF" or "Defendant") and alleges as follows:

COMPLAINT FOR DAMAGES

**BY FAX**

1

## INTRODUCTION

1. Plaintiff Carmen Lamha has worked for Defendant San Francisco Community College District for nearly twenty-eight years, first as an instructor at City College of San Francisco ("CCSF"), then in an administrative capacity as an Associate Dean. She aspired to be promoted to CCSF Dean, but she was repeatedly denied positions she was qualified for. CCSF then unexpectedly and without notice eliminated Lamha's position. Lamha also learned that her fellow Associate Deans were earning far more than she was, despite their all performing substantially the same work.

## PARTIES

2. Plaintiff Lamha was, at all relevant times herein, a resident of the State of California and employed by Defendant CCSF.

3. Defendant San Francisco Community College District is a public entity that was, at all relevant times herein, situated in the City and County of San Francisco, State of California.

4. Plaintiff does not know the true names and capacities of Defendants sued herein as DOES 1–25 and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true identity and capacities when ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of these fictitiously named Defendants is responsible in some manner for the occurrences alleged herein and thereby proximately caused Plaintiff's injuries alleged herein.

5. Plaintiff is informed and believes, and on that basis alleges, that, at all relevant times, each of the Defendants was the agent or employee of each of the remaining Defendants, and, in doing the things herein alleged was acting within the course and scope of such employment, and that Defendants authorized ratified, and approved, expressly or implicitly, all of the conduct alleged herein.

## JURISDICTION AND VENUE

6. The amount of damages sought is within the unlimited jurisdiction of this Court.

7. Venue is proper in this Court pursuant to Code of Civil Procedure section 395(a) because Defendant San Francisco Community College District does business in San

COMPLAINT FOR DAMAGES

2

Francisco County.

## ADMINISTRATIVE EXHAUSTION

8.   Plaintiff Lamha has timely complied with all prerequisites to suit and has exhausted her administrative remedies. On February 8, 2019, she filed a complaint with the Department of Fair Employment and Housing ("DFEH"), including claims of race and sex discrimination. On February 7, 2020, she received her Right to Sue.

9.   Plaintiff Lamha filed a complaint with the DFEH on October 27, 2020, alleging retaliation for engaging in protected activity. She received her Right to Sue the same day.

10.  Plaintiff Lamha submitted an Equal Pay Act Complaint to the California Labor Commissioner, Department of Industrial Relations on February 8, 2019, alleging she was paid less than fellow employees of the opposite sex and of another race for substantially similar work. Plaintiff Lamha received a letter from the Department of Industrial Relations dismissing her charges on September 4, 2020. Though this administrative process, Plaintiff Lamha satisfied the notice requirements of the California Tort Claims Act.

11.  Plaintiff Lamha filed a complaint with the DFEH on November 3, 2020, alleging discrimination and retaliation for requesting and taking California Family Rights Act ("CFRA") leave. She received her Right to Sue the same day.

12.  Furthermore, the statute of limitations on Plaintiff's claims was tolled from April 6, 2020 to October 1, 2020 per California Judicial Council Emergency Rule 9.

## FACTUAL ALLEGATIONS

13.  Lamha began her career with CCSF in September 1993 as a part-time faculty member in the Computer and Information Science ("CIS") and Business Department. Before then, Lamha worked in the Information Technologies ("IT") and computer industries. During her twenty-seven years with CCSF, Lamha was promoted to a full-time faculty position, was elected a faculty chair, and eventually hired as an associate dean. Unfortunately, Lamha's prior work experience and many years of service to CCSF have been overshadowed by the discrimination and retaliation Lamha has faced at CCSF.

14.  Lamha was hired as the Associate Dean of Career and Technical Education ("CTE")

COMPLAINT FOR DAMAGES                                                                3

Pathways and Strong Workforce Program ("SWP") on January 9, 2017. From the beginning of her tenure as an Associate Dean, Lamha faced challenges with the CCSF administration. One of Lamha's primary responsibilities as the Associate Dean of CTE Pathways and SWP was to coordinate with the Associate Dean of Perkins Career and Technical Education Act ("CTEA") and Work Experience, John Halpin ("Halpin"), to distribute grant funding. The funds were jointly allocated to Lamha's and Halpin's divisions and the two Associate Deans worked to filter through funding applications submitted by the academic departments and to determine which departments would receive funding and how much each department would receive. Halpin, who was new to CCSF and who had never worked at a community college before, was unfamiliar with the allocation process. Lamha, who had experience in running fund allocation committee meetings, having previously co-chaired the committee and developed the process in which the more than thirty departments competed for funding, trained Halpin in the process.

15. On May 9, 2017, Lamha met with Halpin, her direct supervisor Associate Vice Chancellor Theresa Rowland ("Rowland"), and Associate Vice Chancellor Michael Almaguer ("Almaguer"), to discuss the results of the grant funding allocations. They had to go through the entire list of funding requests and decided that in order to this efficiently, Halpin would call out the items on the list, Almaguer would check off his list, and Lamha would look at the proposal request and confirm the dollar amounts requested and allocated. The next day, Rowland called Lamha early in the morning and asked her to publicly state at the next deans meeting the great work Halpin had done in the allocation process. Lamha was surprised by this request as deans publicly recognizing each other's work at these meetings was not a common practice. Believing Rowland assumed Halpin had done the majority of the work allocating the funds, Lamha emailed Rowland later that day asking her to call her to discuss. In the email, Ms. Lamha clarified that she had run the funding allocation meeting and was just as knowledgeable about the allocation results as Halpin was. Lamha had also run a CTE steering committee meeting that Rowland and Halpin were unable to attend, and was working closely with faculty members to improve the allocation process. Rowland did not respond to

COMPLAINT FOR DAMAGES

4

that email or call Lamha. Instead, Lamha caught up with Rowland that evening and asked her if they could talk about their phone call that morning. Rowland replied that she had read the email and they did not need to talk about it anymore.

16. In May 2017, Tom Boegel ("Boegel") was hired as the Vice Chancellor of Academic Affairs. Academic Affairs had several open positions at the time and Boegel immediately started filling Interim Dean positions with little regard for the promotion process. Lamha expressed her interest in a Dean position to Boegel and Rowland. These positions were largely subject to Accelerated Hiring procedures, which allowed Boegel to select which candidates would move on to the interview process rather than a hiring committee deciding which candidates were most qualified to interview. Unfortunately, it was common knowledge amongst Lamha and her colleagues that Boegel had little respect for Lamha. Lamha's closest colleagues would comment that they could not understand why Boegel was not promoting Lamha.

17. Around this same time, Lamha learned she was being paid significantly less than her colleagues. Lamha's job responsibilities were substantially similar to Halpin's. However, despite the similarities in their effort, skill, and responsibility each position required, Lamha was paid at a step level well below Halpin. Halpin and Lamha were tasked with jointly distributing the grant funds that were allocated to their departments. After Lamha trained Halpin in the distribution process, the two Associate Deans collaborated in overseeing the decision-making process.

18. Lamha requested Human Resources review her salary in the Summer of 2017 after she realized her salary step was far lower than it should be. Lamha repeatedly followed up with Human Resources for an entire year. She submitted all the documents Human Resources requested, but all her appointments to discuss her salary discrepancy with Human Resources were cancelled. Lamha even brought her salary placement matter up with Dr. Mark Rocha, CCSF's then Chancellor, but he referred her back to Human Resources. On June 20, 2018, Lamha made her fourth attempt to discuss her salary discrepancies with Human Resources. In her email to Dianna Rodriguez ("Rodriguez"), Lamha noted her

COMPLAINT FOR DAMAGES

5

multiple attempts over the past year to have this matter reviewed and that this was her final attempt before she contacted an attorney. Rodriguez set a meeting with Lamha, Lamha's supervisor Clara Starr, and her when Lamha returned from her leave of absence. After much back and forth between Rodriguez, Rowland, and their respective staff members, a meeting was scheduled for November 20, 2018. However, the day before the meeting was set to occur, Rowland notified Lamha that the meeting had been cancelled. Lamha was never given a reason for the cancellation – Lamha's complaints were simply dropped by CCSF.

19. Lamha applied for the Dean of Instruction position, who would report directly to Boegel. After interviewing with the hiring committee, Lamha was selected as a finalist for the position and interviewed with the Boegel, Rowland, and Almaguer. After the hiring committee interview, Boegel's secretary, who had heard from a committee member that her interview went very well, congratulated Lamha. She told Lamha that one of the committee members said that he believed Lamha had the best chance to be selected because she was the most qualified candidate. Instead, a less experienced white woman was chosen for the position. After the selection was made, a committee member told Lamha that she could not believe she was not chosen because of her vast experience at CCSF.

20. Soon afterwards, Lamha attended a conference with Rowland. Rowland knew that Lamha was disappointed by the decision and invited her to have a drink. Over drinks, Rowland told Lamha that the only reason she wasn't hired was because her experience was too similar to Boegel's. This was a spurious and pretextual justification, as Boegel was well aware that Lamha's background was in IT, and not programming like Boegel. Rowland asked Lamha what she wanted from CCSF and Lamha responded that she wanted to be promoted to a Deanship. Rowland told her "let's make you a dean" and encouraged Lamha to continue to apply for positions. That evening, Lamha and Rowland caught up with their colleagues, Dean Rob Frost and Dean Donna Reed, who were also at the conference. Lamha's colleagues highlighted her qualifications and told her they would recommend her for the open CTO position. Each of Lamha's following attempts to be promoted would prove to be futile, as Boegel hired only white women into these positions rather than Lamha, who is Brazilian.

COMPLAINT FOR DAMAGES                                                                 6

21. Lamha applied for the CTO position but was not offered an interview. Lamha also applied for the Dean of Online Learning position, but despite being qualified for the position, was again not selected by Boegel. Lamha is trained in Online Learning and Educational Technology and even holds a master's degree in Instruction Technologies, with a focus in Distance Learning, from California State University, San Francisco. Lamha worked closely with the Online Department at CCSF and participated in online learning initiatives. She received a Distinguished Achievement Award for Academic Excellence in 2009. By all metrics, she was qualified for the position. However, Boegel continued to use the Accelerated Hiring program to avoid selecting Lamha for an interview despite her superior qualifications. Rowland, the chair of the hiring committee for the Dean of Online Learning position, was aware Lamha had applied for the position. Rowland asked Lamha if she had submitted her application in full by the deadline, as she had not seen it amongst those selected for interviews. Lamha told her she had, and Rowland called Human Resources to see if they received the application. After that call, Rowland was prohibited from speaking about it further with Lamha. Despite her qualifications, Lamha was not even given the opportunity to interview for the position. Instead, Boegel filled each of the four vacant positions with Carol Meagher, Edith Kaeuper, Kristina Whalen, and Wendy Miller—all white women who were far less qualified than Lamha. It became clear to Lamha and her colleagues that Boegel would continue to promote other less-qualified applicants instead of Lamha.

22. On May 16, 2018, soon after she learned she had not been selected to interview for the Dean of Online Learning position, Lamha emailed Human Resources to ask about this and the other positions to which she had applied but had not been selected for an interview. The HR department stated that the interview decisions were made because of Boegel's use of the Accelerated Hiring procedure. Lamha insisted Human Resources answer her questions since she had the minimum qualifications to warrant an interview. They informed her that Boegel had hand-picked resumes without any hiring committee participation.

23. CCSF's general hiring procedures required the hiring committee to select applicants to interview after the committee members reviewed their applications, resumes, and letters

COMPLAINT FOR DAMAGES                                              7

of recommendation. In contrast, the Accelerated Hiring procedure shifted the interview selection from the hiring committee to the individual who would supervise the new hire. The hiring committee would then interview only those whom the supervisor selected. While initially believed to be a streamlined process, the rushed process simply allowed the single decision-maker's (here, Boegel's) biases to repeatedly exclude Lamha from consideration, unchecked by a hiring committee.

24. On June 12, 2018, Lamha received her performance evaluation. Rowland told her that her score, a 4.0, was the highest of the entire team.

25. After fighting for a promotion, and being consistently denied one without justification, Lamha suffered a nervous breakdown in June 2018. The stress made her sick to her stomach and led to increased blood pressure. Lamha's doctor placed her on immediately medical leave for two months on June 18, 2018. Lamha requested this leave under the Family Medical Leave Act and/or the California Family Rights Act on June 18, 2018. Her leave was extended until December 31, 2018.

26. Sometime after her return in January 2019, during a team meeting, Rowland asked Lamha and four colleagues to go around the table and ask for resources. Lamha requested a research assistant to replace one that had left. Rowland responded, "I'm going to show you some tough love. While you were on four months leave, I had to do your job. Now you will have to make do on your own." Lamha believed Rowland to be an ally in her fight to be promoted, aware of her struggles to move up at CCSF with Boegel making promotion decisions. Instead, Lamha was criticized and humiliated in front of her colleagues for taking a protected medical leave, which was brought on by Boegel's constant refusal to promote her, despite her qualifications. Lamha stopped asking for resources after her public humiliation, which was undoubtedly Rowland's desired response to her unwarranted criticism.

27. Feeling as though she had no further recourse, Lamha filed her complaints with the DFEH and Department of Industrial Relations alleging race and gender discrimination due to the pay discrepancies amongst her and her colleagues on January 29, 2019.

COMPLAINT FOR DAMAGES 8

28. When Lamha returned from a vacation in June 2019, Halpin was promoted to the Dean of CTE, making him Lamha's manager. Lamha was given no prior notice of this decision, and there was no hiring process for Halpin's promotion. However, now Lamha had to report to a manager who was less qualified and less experienced at CCSF than she was. In his new role as Dean of CTE, Halpin began making decisions regarding the SWP Grant that Lamha was responsible for managing without first discussing these decisions with her.

29. By the next month, every Associate Dean had been promoted to a Dean except for Lamha. On July 31, 2019, CCSF released the new pay schedule, which eliminated Lamha's position, replacing her Associate Dean position with a Program Manager position. Lamha was given no information about this change, and learned of it for the first time when she saw the new pay schedule. Lamha spent years attempting to advance her career. Her efforts were met with rejection and ultimately job elimination. Now without a position at CCSF, Lamha was compelled to request a return to the classroom in order to remain employed.

30. On September 11, 2019, CCSF issued a press release regarding administrator salaries in which it disclosed Lamha's DFEH claim against CCSF stating that "A current employee has in fact filed a State of California Department of Fair Employment and housing (DFEH) claim to sue the district on this basis, which presents a significant expense to the district. There is no question the Board's approval of the revised salary schedule has reduced the possibility of further claims and suits." Not long after, Lamha received a call on her personal number from a reporter with the publication 48hills asking about her DFEH claim against CCSF. Lamha refused to comment. However, on September 20, 2019, 48hills published an article titled "City College panel wants to slow down big administrative salary hikes" in which it published the above excerpt of CCSF's press release and portions of Lamha's DFEH charge. These disclosures of Lamha's complaint, her private phone number, and the negative spin in the press were improper and constitute further retaliation.

31. The above allegations are incorporated by reference in each and every cause of action stated below.

<strong><u>FIRST CAUSE OF ACTION</u></strong>

COMPLAINT FOR DAMAGES

9

### Race Discrimination in Violation of the FEHA

Plaintiff realleges and fully incorporates herein each and every allegation of the preceding paragraphs.

32. Defendant is an employer within the meaning of FEHA.

33. At all relevant times, Plaintiff was an employee of Defendant.

34. Defendant discriminated against Plaintiff by refusing to promote her to positions for which she was qualified, and constructively demoted her.

35. Plaintiff's race was a substantial motivating reason for Defendant's adverse employment actions.

36. Plaintiff was harmed.

37. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

### SECOND CAUSE OF ACTION

### Wage Discrimination in Violation of the California Equal Pay Act

Plaintiff realleges and fully incorporates herein each and every allegation of the preceding paragraphs.

38. At all relevant times herein, Plaintiff was employed by Defendant.

39. At all relevant times herein, Plaintiff was paid less than the rate paid to persons of the opposite sex and a person of a different race working for Defendant.

40. At all relevant times herein, Plaintiff was performing substantially similar work as the other people, considering the overall combination of skill, effort, and responsibility required.

41. Plaintiff was working under similar working conditions as the other people.

42. As a direct result of Defendant's conduct, as alleged herein, Plaintiff has suffered lost wages, severe emotional distress, physical pain and suffering, and injuries in an amount to be proven at trial.

43. Defendant's discriminatory pay practice was a substantial factor in causing Plaintiff's harm.

44. Defendant's actions and omissions, as alleged above, constitute oppression, fraud, and/or malice within the meaning of Civil Code § 3294 in that Defendant committed its acts

and omissions with an intention to cause injury to Plaintiff and/or with a willful and conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary or punitive damages.

45. As a result of Defendant's violations, Plaintiff has been compelled to employ attorneys and is entitled to attorney's fees pursuant to Lab. Code § 1197.5(h).

### THIRD CAUSE OF ACTION

### Retaliation in Violation of FEHA

Plaintiff realleges and incorporates herein each and every allegation in the preceding paragraphs.

46. At all relevant times herein, Plaintiff was employed by Defendant.

47. Defendant constructively demoted Plaintiff by promoting each other Associate Dean to a Dean position and eliminating the Associate Dean position she held.

48. Plaintiff was harmed.

49. Defendant's decision to constructively demote Plaintiff was a substantial factor in causing Plaintiff harm.

50. As a direct result of Defendant's conduct, as alleged herein, Plaintiff has suffered lost wages, severe emotional distress, physical pain and suffering, and injuries in an amount to be proven at trial.

51. Defendant's actions and omissions, as alleged above, constitute oppression, fraud, and/or malice within the meaning of Civil Code § 3294 in that Defendant committed its acts and omissions with an intention to cause injury to Plaintiff and/or with a willful and conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary or punitive damages.

52. As a result of Defendant's violations, Plaintiff has been compelled to employ attorneys and is entitled to attorney's fees pursuant to Gov. Code § 12965(b).

### FOURTH CAUSE OF ACTION

### Retaliation in Violation of Labor Code Section 1102.5

Plaintiff realleges and incorporates herein each and every allegation in the preceding paragraphs.

53. Defendant was Plaintiff's employer.

54. Plaintiff disclosed to the Department of Fair Employment and Housing and the Labor Commissioner that she had been discriminated against on the basis of her sex and race by being paid less for performing substantially similar work as persons of the opposite sex and of a different race.

55. Plaintiff had reasonable cause to believe that her being paid less for performing substantially similar work as persons of the opposite sex and of a different race was in violation of a state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

56. Defendant constructively demoted Plaintiff.

57. Plaintiff's disclosure of Defendant's Labor Code violations was a contributing factor in Defendant's decision to demote Plaintiff and/or take other adverse actions.

58. Plaintiff was harmed.

59. Defendant's conduct was a substantial factor in causing Plaintiff's harm.

## FIFTH CAUSE OF ACTION

### Interference in Violation of FMLA

Plaintiff realleges and incorporates herein each and every allegation in the preceding paragraphs.

60. Defendant is an employer covered by the Family Medical Leave Act ("FMLA").

61. Plaintiff suffered from a serious health condition.

62. Plaintiff was eligible for job protected leave of absence under FMLA.

63. Plaintiff requested and took a leave of absence to address her serious health condition.

64. Defendant retaliated against Plaintiff by denying her the resources she required to fulfill her job duties when she returned from leave.

65. Plaintiff's taking a leave of absence to address her serious health condition was a factor in Defendant's decision to retaliate against Plaintiff.

66. Plaintiff was harmed.

67. Defendant's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

COMPLAINT FOR DAMAGES                                                                 12

## SIXTH CAUSE OF ACTION

### Interference in Violation of CFRA

Plaintiff realleges and incorporates herein each and every allegation in the preceding paragraphs.

68. Defendant is an employer covered by the California Family Rights Act ("CFRA").

69. Plaintiff suffered a serious health condition.

70. Plaintiff was eligible for job protected leave under CFRA.

71. Plaintiff requested and took a leave of absence to address her serious health condition.

72. Defendant retaliated against Plaintiff by denying her the resources she required to fulfill her job duties when she returned from leave.

73. Plaintiff's taking a leave of absence to address her serious health condition was a factor in Defendant's decision to retaliate against Plaintiff.

74. Plaintiff was harmed.

75. Defendant's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For an award of damages and restitution to Plaintiff against Defendant for its nonpayment of wages, including economic damages, and for any punitive or penalty damages allowed under California law;

2. For an award of damages to Plaintiff for her non-pecuniary losses, including, but not limited to, pain and suffering, emotional distress, and humiliation, in an amount to be proven at trial;

3. Costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees;

4. Pre- and post-judgment interest, as provided by law;

5. All applicable statutory penalties arising from Defendant's unlawful conduct, as

alleged herein;

6. Injunctive and declaratory relief; and

7. Any and all such other and further legal and equitable relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims to which he has a right to jury trial.

Date: November 3, 2020

HOYER & HICKS

_____
Richard A. Hoyer
Ryan L. Hicks
Eisha Perry
*Attorneys for Plaintiff*
CARMEN LAMHA

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, bar number, and address): | | FOR COURT USE ONLY |
|---|---|---|
| Ryan L. Hicks (SBN 260284), Eisha Perry (330621)<br>Hoyer & Hicks<br>4 Embarcadero Center, Suite 1400, San Francisco, CA 94111 | | **NO SUMMONS ISSUED**<br>**FILED**<br>San Francisco County Superior Court<br>NOV 04 2020<br>CLERK OF THE COURT<br>BY: _Chalene Johnson_<br>Deputy Clerk |
| TELEPHONE NO.: 415.766.3539   FAX NO. (Optional): 415.276.1738 | | |
| ATTORNEY FOR (Name): Plaintiff CARMEN LAMHA | | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCSICO<br>STREET ADDRESS: 400 McAllister Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Francisco, 94012<br>BRANCH NAME: | | |
| CASE NAME:<br>CARMEN LAMHA v. SAN FRANCSICO COMMUNITY COLLEGE DISTRICT | | |
| **CIVIL CASE COVER SHEET**<br>[x] Unlimited   [ ] Limited<br>(Amount demanded exceeds $25,000)   (Amount demanded is $25,000) | **Complex Case Designation**<br>[ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>CGC-20-587801<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [x] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

   *BY FAX*

3. Remedies sought (check all that apply): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): 6
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: November 3, 2020

Ryan L. Hicks                                                             _/s/ R. Hicks_
(TYPE OR PRINT NAME)                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice–Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[Print this form] [Save this form] [Clear this form]